UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TINA M. GUMM,<br><br>       Plaintiff,<br> v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:17-cv-05030-TLF<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Tina M. Gumm has brought this matter for judicial review of the Commissioner's denial of her application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision to deny benefits.

## FACTUAL AND PROCEDURAL HISTORY

On January 31, 2012, Ms. Gumm filed an application for SSI benefits, alleging that she became disabled beginning January 9, 2006. Dkt. 11, Administrative Record (AR) 586. That application was denied on initial administrative review, on reconsideration, and after a hearing before an administrative law judge (ALJ). *Id.* On August 19, 2015, this Court reversed the ALJ's decision and remanded for further proceedings. *Id.* On May 18, 2016, another hearing was held before a different ALJ, at which Ms. Gumm appeared and testified, as did a vocational expert.

ORDER - 1

AR 646-81. Ms. Gumm amended her disability's alleged onset date to January 31, 2012. AR 586.

In a written decision on November 14, 2016, the ALJ found that Ms. Gumm could perform her past relevant work and therefore was not disabled. AR 586-94. It appears that the Appeals Council did not assume jurisdiction of the matter, making the ALJ's decision the Commissioner's final decision, which Ms. Gumm appealed in a complaint filed with this Court on January 13, 2017. Dkt. 3; 20 C.F.R. § 416.1481.

Ms. Gumm seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative, for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical evidence;

(2) in discounting Ms. Gumm's credibility;

(3) in assessing Ms. Gumm's residual functional capacity; and

(4) in finding Ms. Gumm could perform her past relevant work.

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged and therefore affirms the ALJ's decision to deny benefits.

## DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*. At issue here are the ALJ's weighing of the medical evidence, her determination that Ms. Gumm's subjective claims were not consistent with the record, and her resulting assessment of Ms. Gumm's RFC and conclusion that Ms. Gumm could perform her past work as a receptionist.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 862 F.3d 987, 996 (2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir. 1971)); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Morgan*, 169 F.3d at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and

conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

In general, an ALJ should give more weight to a treating physician's opinion than to a non-treating physician's opinion, and more weight to the opinion of an examining physician than that of a non-examining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinion of either a treating or examining physician. *Trevizo*, 862 F.3d at 997. An ALJ need not accept an opinion that "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195.

To reject the opinion of a source that is not an "acceptable medical source," the ALJ only needs to give reasons germane to that opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Registered nurse practitioners are not acceptable sources unless they work under physicians' close supervision. *See Molina*, 674 F.3d at 1111. Whether an opinion is from an acceptable medical source or a medical source that is not acceptable, the ALJ should weigh the opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Id.*; *see* 20 C.F.R. § 416.927(c)(1)-(6), (f)(1).

### A. Sara Knox, ARNP

Sara Knox, Advanced Registered Nurse Practitioner (ARNP), evaluated Ms. Gumm on a

check-form in March 2014. AR 835. ARNP Knox listed Ms. Gumm's reported symptoms of sciatic nerve, back pain, pelvic pain, and arthritic bilateral feet. AR 835. She diagnosed Ms. Gumm with "herniated discs" and opined that this would markedly limit Ms. Gumm in sitting, standing, walking, lifting, carrying, pulling, reaching, and crouching. AR 837. ARNP Knox opined that Ms. Gumm was "[s]everely limited," meaning she could not perform even sedentary work. AR 836. ARNP Knox wrote that an "NCT" and updated MRIs or x-rays were needed and recommended "ongoing treatment with current specialists," Dr. Payal Shah and Dr. Ryan Halpin. *Id.* In the space for Ms. Knox to list objective bases for her opinions, she wrote "see attached chart note." AR 837. No such note appears in the record. ARNP Knox listed no other bases for her opinions.

The ALJ gave "little weight" to ARNP Knox's opinion and noted that nothing in the record suggests that ARNP Knox ever treated Ms. Gumm. The ALJ also stated that ARNP Knox was not an acceptable medical source, according to Social Security regulations. AR 593. The ALJ reasoned that, in any case, ARNP Knox's opinion lacked objective support in that "there are no exam findings indicating [Ms. Gumm] cannot work." *Id.*

Ms. Gumm concedes that ARNP Knox is not an acceptable medical source. *See Molina*, 674 F.3d at 1111 (nurse practitioner not an acceptable medical source under the Social Security regulations). The ALJ was also correct that nothing in the record indicates that ARNP Knox ever treated Ms. Gumm, entitling ARNP Knox's opinion to even less weight.[1] *See* 20 C.F.R. § 416.927(f)(1) (ALJ will evaluate non-acceptable medical sources using same criteria as for other medical opinions, including examining and treatment relationship). The ALJ could not, on these bases alone, reject ARNP Knox's opinion that Ms. Gumm cannot perform even sedentary work.

---

[1] The record does not indicate whether or not ARNP Knox met in person with and examined Ms. Gumm before filling out the form.

*See Haagenson v. Colvin*, 656 F. App'x 800, 802 (9th Cir. 2016) (unpublished) ("[T]he regulation already presumes that nurses and counselors are non-acceptable medical sources, yet still requires the ALJ to consider them as 'other sources.'").

Nonetheless, the ALJ gave a germane reason to reject ARNP Knox's opinion, because the ALJ determined that "no exam findings indicat[e] [Ms. Gumm] cannot work." AR 593; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005) (inconsistency with medical evidence is germane reason for discrediting testimony of lay witness); *see also Edgecomb v. Colvin*, No. C13-0704-JCC, 2014 WL 12684489, at *3-4 (W.D. Wash. Feb. 18, 2014), *aff'd*, 671 F. App'x 517 (9th Cir. 2016) (lack of explanation and objective support for other-source medical opinions is germane reason to reject them).

The record contains medical records that are somewhat conflicting, but on the whole supports that reason. In arguing to the contrary, Ms. Gumm contends that ARNP Knox "summarized the findings of Drs. Shah and Halpin" and made "extensive" references to their objective findings. Dkt. 16, p. 7. This mischaracterizes ARNP Knox's evaluation. ARNP Knox mentioned Dr. Shah and Dr. Halpin simply as part of a recommendation that Ms. Gumm should continue treatment with them. AR 836. ARNP Knox did not otherwise describe or rely on their findings or any other medical evidence, with the exception of a chart note that is not in the record. *See* AR 835-37.

Ms. Gumm also cites, as support for ARNP Knox's opinion, Dr. Halpin's clinical observation of "significant lateral recess stenosis . . . due to ligamentous hypertrophy and a broad based disc bulge." Dkt. 16, p. 5 (citing AR 506). This is objective evidence of an impairment, and the ALJ accordingly found "[degenerative disc disease] of the lumbar spine with stenosis (including lateral recess stenosis at L4-5)" to be a severe impairment at step two. AR 588-89. But

Ms. Gumm cites no evidence to indicate that this impairment *caused the severe limitations* Ms. Knox found.[2]

Thus, the ALJ did not err in rejecting Ms. Knox's brief, conclusory, and unsupported opinion. *See Molina*, 674 F.3d at 1111 (upholding rejection of medical opinions from a non-acceptable source "on the grounds that [they] were 'quite conclusory,' provided very little explanation of the evidence relied on, were not supported by [the claimant]'s objective medical condition, and were inconsistent with the opinion of . . . the examining psychiatrist").

B.     Medical Evidence of Migraines

Ms. Gumm also contends that "The ALJ Harmfully Erred in Evaluating [Ms. Gumm]'s Migraines." Dkt. 16, p. 7. In her briefing, Ms. Gumm combines occipital neuralgia, a separate diagnosis, with her migraines. *Id.* at 3, 7. But Ms. Gumm does not cite a legal basis for this Court to find error in the ALJ's evaluation of the evidence relating to her migraines and occipital neuralgia. *See id.* at 7-8. This precludes the Court's review of this issue. *See Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed).[3]

---

[2] The record's only other opinion evidence pertaining to Ms. Gumm's physical conditions is Dr. Gordon Hale's May 2012 disability determination explanation. AR 113; AR 593. Ms. Gumm does not challenge the ALJ's brief analysis of Dr. Hale's opinion.

[3] Even if the Court reviewed this issue, it would find that the ALJ did not err as Ms. Gumm alleges. The ALJ found that Ms. Gumm's migraines and occipital neuralgia were severe impairments. She also found, however, that the record showed that Ms. Gumm had reported medications being effective for her headaches and that neither she nor her doctor had described her most recent headaches as migraines. AR 593. Ms. Gumm argues for a different interpretation of the record, pointing to evidence that her medical providers prescribed strong medications like morphine and that one physician suggested (though did not prescribe) radiofrequency ablation for her occipital neuralgia. *See* AR 978-81. But the record contains no medical evidence about how Ms. Gumm's headaches limit her ability to function in a work setting, and she does not explain why the ALJ's interpretation of the record was unreasonable. *See Allen*, 749 F.2d at 579.

II. The ALJ's Evaluation of Ms. Gumm's Subjective Claims

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. An ALJ cannot reject a claimant's pain testimony solely on the basis of a lack of objective medical evidence in the record. *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). Such a determination can satisfy the clear and convincing requirement when the ALJ "specif[ies] what complaints are contradicted by what clinical observations." *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834.

Here, the ALJ found that Ms. Gumm's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 591. Ms. Gumm contends that the ALJ erred in discounting her testimony because objective evidence—strong pain medications and one physician's "suggestion of" radiofrequency ablation—supported her statements about the limiting effects of her neck and back pain and showed that prescribed treatment was not always effective. Dkt. 16, pp. 8-9.

ORDER - 8

The Court disagrees that the ALJ erred in discounting Ms. Gumm's testimony. Although the ALJ explained her decision "with 'less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (quoting *Alaska Dept. of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)); *see Magallanes*, 881 F.2d at 755 (noting district court may draw "specific and legitimate inferences from the ALJ's opinion"). The Court can do so here, as the ALJ identified specific testimony she found not credible, she identified evidence that undermines that testimony, and the record as a whole supports her reasoning. *See Lester*, 81 F.3d at 834.

The ALJ first found that the medical evidence shows that Gumm has a condition that causes her pain, and that this evidence supports the limitations the ALJ included in the RFC. AR 591. The ALJ found certain testimony not credible, though: that Ms. Gumm's pain prevents her from working, AR 591; that due to pain Ms. Gumm has trouble pulling a shirt over her head and putting on her shoes and cannot walk without difficulty, AR 591; that Ms. Gumm continued to have significant symptoms after the physical therapy she underwent following her surgery, AR 592; and that her migraines interfere with her ability to work, AR 593. The ALJ found that that the medical evidence did not support the full extent of limitations that Gumm alleged. AR 591, 592.

The record does not support two of the reasons the ALJ gave for discounting that testimony. The record shows that, contrary to the ALJ's finding, Gumm did continue to show "significant symptoms" after a period of physical therapy following her 2012 microdiscectomy surgery, as Gumm continued to seek treatment for pain in her neck, back, and head throughout the disability period. *See, e.g.*, AR 524, 772, 876, 948. Likewise, the record also shows, contrary to the ALJ's finding, that Gumm received more than conservative treatment after her 2012

surgery. Rather, she received cortisone injections throughout the alleged disability period. AR 508, 582, 844-53, 1090; *see Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"). She also received a number of medications over that period, including motrin, morphine, hydrocodone, oxycodone, proprandol, and gabapentin. AR 515, 550-54, 844, 849, 852, 871-72, 975, 1118; *see Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (expressing skepticism that treatment with strong pain medications and injections is conservative). And she received at least one more surgery on her spine, for which she needed to wear a cervical collar. AR 858, 861.

Nonetheless, as the ALJ found, the record does not contain support for the functional limitations that Gumm alleges.

"[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ did not reject Gumm's complaints based on a lack of evidence to corroborate the severity of her pain. Rather, the ALJ relied on treating physicians' clinical observations that contradicted the functional limitations that Gumm claimed. Functional limitations and restrictions are among the factors an ALJ may consider in evaluating a claimant's testimony. 20 CFR 416.929(c)(3); SSR 16-3p.

For example, although Ms. Gumm sought pain treatment throughout the disability period, the ALJ noted that the medical records indicate that Gumm's condition was stable, she felt her symptoms to be manageable, and she functioned normally. *See, e.g.*, AR 507 (mostly normal exam findings, including "full weightbearing without . . . walking aid," "fairly normal range of motion passively," and ability to complete active range of motion despite discomfort), 582 (Ms.

Gumm told Dr. Halpin that although in pain "she feels her symptoms are manageable" and declined surgery), 876 ("ambulating independently"), 940 (pain constant but stable with medications, course "well controlled"), 948 ("ambulating independently without difficulty" and reports symptoms are tolerable). On one occasion, in September 2013, Ms. Gumm reported that her pain was intolerable and requested another surgery. AR 876. Four months later, however, she reported that her symptoms were "holding steady" and she did not want surgery. AR 873-75. Dr. Halpin noted that she was "coming along fairly well" and prescribed physical therapy. *Id.*

Significantly, the record does not contain any medical opinions from treating physicians that could link the pain Gumm reported to limitations on her abilities. Notes by Dr. Shah and Dr. Halpin recorded Gumm's subjective complaints but did not opine on her physical capabilities. To the extent Dr. Halpin and Dr. Shah observed Gumm's functioning, they wrote that she could perform normally, albeit with discomfort. *See, e.g.*, AR 507. The ALJ was entitled to view this record as a whole and draw reasonable inferences. *See Ghanim v. Colvin*, 763 F.3d 1154, 1159-60 (9th Cir. 2014).

Thus, while the ALJ's analysis was partly incorrect, the ALJ offered a clear and convincing reason to discount Ms. Gumm's testimony that her neck and back pain prevented her from working by making it difficult to stand, walk, and put on a shirt or shoes, and the record supports that reason.

With respect to Ms. Gumm's migraines, the ALJ found that the medical evidence did not show that Gumm's headaches interfered with her ability to work . AR 593. The ALJ gave the additional reason that the record shows that Ms. Gumm reported her medication to be effective in relieving her headaches. *Id.* The record supports both these reasons. *See* AR 888 (Imitrex "is still working for her" in August 2013). In challenging the ALJ's decision to discount her migraine

1  testimony, Ms. Gumm asserts that doctors prescribed heavy medications that "were extreme and
2  were not always effective." Dkt. 16, p. 9 (arguing with respect to both headache and neck and
3  back pain). Gumm's providers' diagnoses, and the medications they prescribed her, do show that
4  her migraines were a severe impairment, as the ALJ found them to be. AR 589. As noted above,
5  however, the record contains no opinion evidence to suggest that Gumm's migraines
6  significantly affected her ability to work. While Ms. Gumm asks the Court to draw different
7  inferences from her medical record, she does not explain how the ALJ's inferences were
8  irrational. *See Allen*, 749 F.2d at 579.

III. <u>The ALJ's RFC Assessment</u>

The ALJ assesses a claimant's residual functional capacity (RFC) assessment at step four of the sequential evaluation process to determine whether the claimant can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.*

The ALJ found Ms. Gumm had the RFC "to perform a range of sedentary work," as she

> **can lift ten pounds occasionally and less than ten pounds frequently; she can stand and/or walk for four hours and sit for a total of six hours of an eight-hour workday; she can occasionally climb ramps and stairs, but never climb ropes, ladders, or scaffolds; she can occasionally balance, stoop, crawl, c[r]ouch, and kneel; she should avoid concentrated exposure to hazards.**

AR 590 (emphasis in the original).

Ms. Gumm contends that the ALJ erred in finding this RFC and, consequently, in finding her not disabled at step four. But because the Court finds that the ALJ did not err as Ms. Gumm alleges, the Court finds that the ALJ properly determined Ms. Gumm's RFC.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Gumm to be not disabled. The Commissioner's decision to deny benefits is therefore AFFIRMED.

Dated this 5th day of September, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 13